SMITH (KELLY v.). See Case No. 7,675.

SMITH (KING v.). See Case No. 7,806.

SMITH (LAMBERT v.). See Cases Nos. 8,-027 and 8,028.

SMITH (LEAGUE v.). See Case No. 8,159.

SMITH (LEWIS v.). See Case No. 8,332.

SMITH (LINKER v.). See Case No. 8,373.

SMITH (LINN v.). See Case No. 8,375.

## Case No. 13,072.

SMITH v. LITTLE et al.

[5 Biss. 490;[1] 9 N. B. R. 111; 6 Chi. Leg. News, 86.]

Circuit Court, N. D. Illinois. Nov.. 1873.

BANKRUPTCY — PREFERENCE — LIMITATION—PRACTICE IN EQUITY.

1. Where the obligor on a bond, in order to indemnify his sureties, obtains securities from one of his debtors and turns them over to his sureties, the transaction is a preference between the parties, under the first clause of the thirty-fifth section of the bankrupt act [of 1867 (14 Stat. 534)], and not a transfer under the second clause, and the four months' limitation applies.

2. The fact that the securities were made to run directly to the sureties does not change the character of the transaction when they were obtained at the instance of the obligor. A court of equity will look at the substance rather than the form of the transaction.

[1] Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

3. Where a bill must be dismissed for want of equity, jurisdiction will not be retained to settle the priorities or equities between the defendants.

This was a bill in chancery filed by Joseph H. Smith, assignee of Jacob and Ezrom Mayer, against Charles H. Little and others, to set aside certain mortgages made by said bankrupts to the defendants.

Geo. Scoville, for complainant.

J. M. Bailey, for defendant.

T. J. Turner, for Mrs. Wm. B. Mayer.

BLODGETT, District Judge. The facts in the case, as they appear from the pleadings and proofs, I find to be these:

On the 14th of May, 1870, and for some years previous thereto, Ezrom Mayer had been treasurer of the Freeport school district, embracing the city of Freeport, and had given his official bond as such treasurer, with defendants Little, Clayton, Bartlett and McCall as his sureties. He was also at the same time school treasurer of town 27, N. R. 8, in Stephenson county, with defendants Little, Clayton, Bartlett, McCall and Miller as his sureties.

At about the date mentioned, it was ascertained that said Ezrom was a defaulter in his office as such treasurer, and that his sureties would probably be compelled to make good the delinquency. They accordingly applied to him for indemnity and he procured his father, Jacob Mayer, to make and deliver to said sureties a mortgage on his farm, near Freeport, for $5,000, dated May 14, 1870, also to assign to said sureties a mortgage for $2,100, dated May 21, 1869, from Wm. B. Mayer and wife, to said Jacob Mayer. At the same time Ezrom and wife made and delivered to his said sureties a mortgage for $2,000, on his homestead in Freeport.

Suit was brought on the official bond of Ezrom, as treasurer of the Freeport school district, and judgment recovered against him and his sureties. Little, Clayton, Bartlett, and McCall, for $7,351.36 and costs, at the December term of the Stephenson county circuit court, which judgment on appeal was affirmed by the supreme court, and has since been paid by said sureties, each contributing equally, the total amount at the time of payment being about $8,000.

There did not seem to be any defalcation as township treasurer, and the defendant Miller sets up no claim to the securities turned out. These mortgages, although dated on the 14th of May, 1870, were not delivered until the 16th of that month, on which day the transaction was consummated.

On the 12th day of November, 1870, a petition in bankruptcy was filed in the district court of this district, against said Jacob Mayer and Ezrom Mayer. on which they were subsequently adjudicated bankrupts. The plaintiff was duly elected assignee of said bankrupts, and now brings this suit to set aside said conveyances as having been made

In violation of the bankrupt act. It is admitted that the homestead of Ezrom is incumbered by a prior mortgage to its full value, so that no importance is attached to the $2,000 mortgage by him and no argument is made in regard to that point.

It appears from the evidence that Ezrom Mayer had been for several years prior to the transactions complained of, cashier of the First National Bank of Freeport, and that during the years 1865, 1866 and 1867, Jacob, Ezrom, and Martin Mayer were engaged in carrying on the confectionery and bakery business, in Freeport, under the firm name of Jacob Mayer & Sons. This firm was dissolved on the first of January, 1868, and Jacob Mayer took and continued to carry on the confectionery branch of the business, the bakery being taken and caried on by his son Martin.

Jacob Mayer is now about sixty-nine years old, and has never taken any active part in the management of the business of either said firm of J. Mayer & Sons or J. Mayer. At the dissolution of the firm it was indebted to Ezrom Mayer in about the sum of $3,367. And after the dissolution of said firm said Jacob became further indebted to Ezrom to the amount of about $4,500. This, together with the indebtedness of the old firm to Ezrom, with interest, made, as he states, the amount upward of $9,000, due from Jacob to Ezrom at the time of giving the mortgages in question.

It does not appear from the evidence that any direct dealing was had between defendants Little, Clayton, Bartlett and McCall, and Jacob Mayer, in regard to these mortgages. They called on their principal, Ezrom Mayer, to indemnify them against their liability as his sureties. and he induced his father to make the $5,000 mortgage and assign to them the one for $2,100. The negotiations by which the mortgages were obtained from Jacob Mayer were conducted by or on behalf of Ezrom, and not by or on behalf of the sureties. And it does not appear that in these negotiations Ezrom claimed these mortgages from his father on account of the indebtedness due him from his father.

The complainant insists that this mortgage for $5,000 and the assignment of the one for $2,100, should be set aside as fraudulent within the second clause of the 35th section of the bankrupt law.

The defendants contend that this transaction comes within the first clause of said section,—or, in other words, that all the facts, when taken together, characterize this as a preference by Ezrom Mayer in favor of the sureties on his treasurer's bond within the provisions of the first clause, rather than a conveyance by Jacob Mayer within the second clause. This is the turning point in the case.

If this transaction be deemed only a preference by Jacob Mayer, debtor, to Ezrom Mayer, his creditor, and by Ezrom to his sureties, then it is barred unless a petition in bankruptcy is filed within four months of the transaction; while if it is to be treated as a transaction between Jacob Mayer and the defendants, under the second clause, then the six months given by that clause had not transpired, within four days, at the time the petition was filed.

The case is not free from doubt in my own mind upon the facts proven, but my conclusion, after careful consideration, is that the giving of these mortgages should be treated as a preference of Ezrom Mayer's creditors.

The defendants had no dealings with Jacob Mayer. They demanded security from Ezrom, and he brought them these mortgages. They did not know Jacob Mayer in the transaction, and had no concern with the means by which Ezrom obtained the security from Jacob. The proof shows that Jacob was indebted to Ezrom to an amount largely in excess of the two mortgages, and although Jacob was not requested to execute them on the express ground of his indebtedness to Ezrom, but rather on the ground that Ezrom needed these securities to relieve his embarrassments with his sureties, and save him from going to jail, yet there was ample consideration to support them on account of the indebtedness to Ezrom.

Suppose Ezrom Mayer had taken the $5,000 mortgage and the assignment of the other directly to himself and had then transferred them to defendants, I think there would be no doubt but that the transaction would only amount to a preference, and a court of equity will not regard the form in which a thing is done, but rather its substance and effect.

Although no allusion seems to have been made to the indebtedness existing between them at the time Ezrom applied to his father for the securities, yet I must presume that it was in the minds of the parties, and formed the moving consideration for them. It being abundantly established by the proof that Jacob was at that time indebted to Ezrom in more than the amount of the two mortgages, being so indebted, he gave a preference to Ezrom, his creditor, and Ezrom by causing the securities to be transferred directly to them, gave a preference to the defendants, who are under liability for him. As I said before, the defendants had no claim on Jacob, and did not deal with him, but the form of the proceeding ought not to change the rights of the parties in equity. If the assignee of Jacob or Ezrom Mayer had questioned the transaction within four months after the adjudication in bankruptcy, they could have had it set aside on a proper case being made, but they have waited till after the four months expired, and I think are now too late. The transaction was not kept secret. The documents in question were duly recorded within a short time after their date, and the defendants have made no secret of the assertion of their rights.

It is true there is plausible ground for the

argument made by complainant's counsel, that this was a fraudulent gift or grant by Jacob Mayer, within the second clause of the section, and I admit that the facts bring the transactions fairly upon the debatable ground between the two clauses. But the weight of evidence, I think, strongly preponderates in favor of the view I have taken.

There was a collateral issue raised in the case which has also been quite fully argued, and on which much proof has been presented. It seems that the property covered by the $2,100 mortgage was at one time owned by Susanna Schlott, the wife of John H. Schlott, and while so owned by her, she and her husband, John H., gave a trust deed dated Nov. 16, 1867, to one Barton, to secure the payment of two notes, one for $96.59, and the other for $2.419.60, to Wm. B. Mayer. Afterwards, Mrs. Schlott and her husband conveyed this land to Jacob Mayer, and he conveyed it to Wm. B. Mayer, who gave the $2,100 mortgage in question to Jacob, to secure a part of the purchase money. Complainant insists that when the fee became vested in Wm. B. Mayer, it merged the Schlott mortgage, so that the mortgage from Wm. B. to Jacob Mayer became the first lien on the property. Much evidence has been put upon the record in regard to the intention of the parties as to whether the Schlott mortgage should be kept alive, but I do not deem it necessary for me to follow out and decide these questions in the light of the proof taken and points made, because I think that when I have determined that the assignee in bankruptcy has no claim to the property, I have gone as far as my jurisdiction extends. The parties contending for this mortgage, or rather for the question of its priority, are Mrs. Mayer, wife of Wm. B. Mayer (who claims that she loaned the money to Schlott, and is now the holder of the Schlott mortgage), and the assignee in bankruptcy, and Ezrom Mayer's sureties. They are all citizens of this state and district, and when I hold that the assignee has no title, I can not retain jurisdiction to settle the controversy between Mrs. Mayer and the defendants Little, Clayton, Bartlett, and McCall.

The decree should therefore be that the bill be dismissed for want of equity, as against defendants Little, Clayton, Bartlett, McCall, and Miller; and dismissed without prejudice as between these defendants and defendants Wm. B. and Lucinda Mayer and Barton, touching the validity and priority of the Schlott mortgage.

NOTE. Where the creditor loaned the bankrupt money to take up notes on which the creditor was liable as indorser, at the same time taking a mortgage to secure the loan, *held* a preference under the 35th section of the act. Scammon v. Cole [Case No. 12,433]; Cookinham v. Morgan [Id. 3,183].